UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>LANCE W. LAUGHLIN, )<br>    Debtor )<br>************************** )<br>)<br>COMMUNITYWIDE FEDERAL CREDIT )<br>UNION, )<br>    Appellant, )<br>)<br>vs. )<br>)<br>LANCE W. LAUGHLIN, )<br>    Appellee. ) | Appeal from the U.S. Bankruptcy Court<br>Northern District of Indiana<br><br><br><br>NO. 3:13-CV-353 PS |

**MEMORANDUM OPINION AND ORDER**

Lance Laughlin sold his car without paying off the note held by CommunityWide Federal Credit Union that was secured by the car. Laughlin claims his ex-wife, who had been granted the car in their divorce, returned the car to him with the windows smashed in and other damage to the car, representing that she had paid the car off but didn't want it anymore. Since the car's title jibed with his ex-wife's story, Laughlin sold the car and pocketed the money. CommunityWide is dubious of the story Laughlin tells; they claim Laughlin knew the car hadn't been paid off and that he forged a signature on the title in order to stiff the bank out of what they were owed. CommunityWide filed suit against Laughlin for conversion and won a default judgment in state court after Laughlin failed to appear to defend himself, although Laughlin said he never received notice of the lawsuit.

Laughlin declared bankruptcy after CommunityWide began garnishing his wages to enforce their judgment. CommunityWide then began this adversary proceeding, arguing that

Laughlin's debt to them was non-dischargeable under 11 U.S.C. § 523(a)(6) because Laughlin acted willfully and maliciously to deprive them of their property. After a full trial on the merits, Bankruptcy Judge Dees disagreed, finding Laughlin's testimony credible and thus ruling that the debt was dischargeable. CommunityWide now appeals that determination. Because Judge Dees' factual findings are not clearly erroneous, the opinion of the Bankruptcy court is **AFFIRMED.**

## Background

In October 2006 Lance Laughlin borrowed $18,330.50 from CommunityWide Federal Credit Union in order to buy a 2003 Lexus RX300 [DE 11-1 at 44-47]. The loan was secured by the car, and CommunityWide appeared on the car's certificate of title as the first lien holder. *Id.*

Laughlin testified that he and his wife legally separated in December 2006. [Tr. at 29][1]. Although their divorce wasn't finalized until April 2008, the two entered into a court-ordered property settlement at the outset of the separation. *Id.* at 23, 29. Most likely, this was a provisional order which is often entered in divorce proceedings while the divorce is pending. In any event, as part of that agreement, Laughlin's wife was granted possession of the car *Id.* at 23. Along with possession came responsibility for paying for the vehicle, though Laughlin never actually transferred the title to his wife, apparently believing the court's approval of the settlement took care of it for him. *Id.* at 14-15, 23-24.

As Laughlin tells it, in early 2007, he found the Lexus parked in his driveway with all the windows smashed out and the interior destroyed [Tr. at 16]. He got a message from his wife

---

[1] These citations are to the Transcript of the March 18, 2013 Adversary Proceeding. The full transcript was not provided by the parties in this case, but is available as Docket Entry 30 in *CommunityWide v. Laughlin*, Bankr. N.D. Ind., Case No. 12-03064.

2

stating she was fed-up with the car, had spent all her money paying it off, and couldn't afford to get it fixed. *Id.* Laughlin testified that he wasn't surprised to find a clean title inside the car since his wife said she had paid it off. *Id*. at 26. Laughlin says he spent some money getting the car fixed up and sold it to a dealership for $14,000. *Id.* at 30-31.

The problem with all of this is that Laughlin's ex-wife had not, in fact, paid off the car loan. [Tr. at 60]. Further, someone forged a signature on the car's title releasing CommunityWide's lien. *Id.* at 55-56. On April 6, 2008, CommunityWide filed suit against Laughlin in St. Joseph County Court. CommunityWide alleged Laughlin was liable for conversion, forgery and deception in selling the Lexus. (An earlier criminal case of forgery brought against Laughlin had been dismissed). Laughlin never received notice of the suit so he failed to appear in court to defend himself. *Id.* at 35. As a result, the court entered a default judgment in favor of CommunityWide for $25,969.48 plus the costs of the action [DE 11-1 at 49].

After CommunityWide started collecting on its judgment through a wage garnishment, Laughlin filed for Chapter 7 bankruptcy relief. CommunityWide was named as a creditor in Laughlin's petition because of the state court judgment it had obtained against him. CommunityWide responded by filing an Adversary Proceeding against Laughlin to determine if CommunityWide's judgment was excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

Judge Dees held a trial on CommunityWide's complaint, and after hearing the evidence, Judge Dees found in favor of Laughlin, finding Laughlin's debt to CommunityWide to be dischargeable. Judge Dees found Laughlin's unrebutted testimony to be "probative, . . . reliable and trustworthy . . ." [Tr. at 75]. In crediting Laughlin's story, Judge Dees found that the car

3

was essentially dumped on Laughlin by his ex-wife and that it was in a state of disrepair. [Tr. at 75] Judge Dees believed Laughlin when he said that since his ex-wife got the car in the divorce, he assumed that she had paid the car off. *Id.* The voice mail she left with Laughlin confirmed this fact as did the title to the car which was found inside of it with no lien it. *Id.* Laughlin then fixed the car at his own expense and sold it. According to Judge Dees, when Laughlin did that he "[b]elieved that, since there was no lien on the title, that was his money." In short, Judge Dees found that "Lance Laughlin told the truth." *Id.* at 72. He did not act willfully or maliciously and so the debt to CommunityWide was ordered discharged. *Id*.

## Discussion

In reviewing a bankruptcy court's decision pursuant to 28 U.S.C. § 158(a), the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. Fed. R. Bankr. P. 8013. The standard for review of bankruptcy court decisions depends upon the issue being reviewed. Findings of fact are upheld unless clearly erroneous, but legal conclusions are reviewed *de novo*. *In re Marrs-Winn*, 103 F.3d 584, 589 (7th Cir. 1996); *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

In the adversary proceedings, Judge Dees held that Section 523 of the Bankruptcy Code did not apply and Laughlin's debts were therefore dischargeable. Section 523 provides for certain exceptions for the dischargeability of debts. The one at issue here is § 523(a)(6) which provides that a debt is not dischargeable if the creditor can prove the debtor's actions 1) caused an injury to the property interest of the creditor; 2) the action causing the injury was willful; and 3) the action was done in a malicious manner. 11 U.S.C. § 523(a)(6)*;In re Whiters*, 337 B.R. 326, 339 (Bankr. N.D. Ind. 2006).

4

CommunityWide alleges the bankruptcy court made a number of errors – both factual and legal – but they all boil down to the issue of whether Laughlin acted willfully and maliciously. Judge Dees believed Laughlin's story and therefore found that he didn't act willfully and maliciously. CommunityWide challenges that finding on three main fronts. First, they argue Judge Dees applied the incorrect legal standard in assessing whether CommunityWide had met their burden of proof. Next, they argue that Judge Dees ignored a F.R.C.P. Rule 36 admission that conclusively established Laughlin had acted willfully and maliciously and, in the face of the admission, Judge Dees' finding of fact to the contrary was clearly erroneous. Finally, they argue that the court should have given preclusive effect to the state court judgment against Laughlin. I'll tackle each argument in turn.

### A. Burden of Proof

CommunityWide's first argument is that Judge Dees did not apply the correct burden of proof. As I noted above, in order to prevail in the adversary proceeding, CommunityWide had to show by a preponderance of the evidence that Laughlin's actions in selling the car were willful and malicious 11 U.S.C. § 523(a)(6). To satisfy the willfulness standard, CommunityWide had to show that Laughlin either intended to injure the bank's property interest or acted with substantial certainty that his act would injure it. *In re Whiters*, 337 B.R. at 343. Maliciousness is proven by showing a conscious disregard for a duty owed without just cause or excuse. *In re Thrityacre*, 36 F.3d 697, 700 (7th Cir. 1994). There's no need to show ill will or specific intent to do harm. *Id.*

Judge Dees ruled from the bench in Laughlin's favor, making findings after the conclusion of the adversary proceeding [DE 11-1 at 17-20]. According to CommunityWide,

5

Judge Dees required that they prove Laughlin harbored ill will towards the bank and that Laughlin intended to injure the bank's interest, as opposed to acting with substantial certainty that he would injure it. They seize on a couple of Judge Dees' remarks as evidence of this too-onerous standard. At one point, Judge Dees stated that CommunityWide "had to prove that Mr. Laughlin intended to and caused an injury . . . and that [the actions] were willful and that they were malicious" [DE 11-1 at 18]. He then elaborated: "[t]hat [Laughlin] did it on purpose. That he had evil intent. That he was mean and nasty." *Id.*

If this were the extent of the court's findings, then I might agree with CommunityWide. However, Judge Dees made further findings of fact that clearly demonstrate he understood and applied the correct burden of proof. First, with respect to Laughlin's intent, Judge Dees found Laughlin's story credible: "in this Court's judgment, Lance Laughlin told the truth." *Id*. He consequently found that Laughlin could not have acted with either the intent to, or substantial certainty of, injuring CommunityWide's interest because he was unaware that CommunityWide still had an interest in the car. As Judge Dees noted, Laughlin "didn't think he had to pay anything to the Credit Union because there was no lien on the title and his assumption was . . . that she, the ex-wife, had paid [the car] off." *Id.* at 19. As for the maliciousness prong, Judge Dees explicitly found that Laughlin did not consciously disregard his duty to the bank: "I don't see any conscious disregard of his obligation to the Credit Union." *Id.* Judge Dees' oral findings may not have been as airtight as a written order, but it is sufficiently clear from the record that he applied the correct legal standard. Therefore, CommunityWide's first argument is without merit.

**B.     Requests for Admissions**

The next argument concerns requests for admissions CommunityWide submitted to

Laughlin during discovery. One of the requests asked Laughlin to admit that he "willfully and maliciously converted the [car] to the injury of" CommunityWide [DE 11-1 at 31]. After Laughlin neglected to respond to the bank's requests for admission, CommunityWide moved to have the requests deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3). *Id.* at 27-28. Judge Dees granted the motion in a February 2013 order. *Id.* at 33. CommunityWide argues that Judge Dees erred by ignoring the admission and that, in light of the admission, his finding that Laughlin had not acted willfully and maliciously was clearly erroneous.

CommunityWide is correct that under Rule 36(b), matters admitted are "conclusively established." *Banos v. City of Chicago*, 398 F.3d 889, 892 (7th Cir. 2005). But they are mistaken in thinking that Judge Dees' order deeming their Request for Admission admitted settled the matter of Laughlin's intent. Admissions are evidence. *See id.* And, like all evidence, they have to be offered into evidence at trial. *Walsh v. McCain Foods, Ltd.,* 81 F.3d 722, 726 (7th Cir. 1996) (admissions obtained under Rule 36 may be offered in evidence at the trial of the action, but they are subject to pertinent objections). For whatever reason CommunityWide didn't offer the admissions into evidence during the proceeding. Counsel for CommunityWide made reference to one of the admissions when offering the state court judgment into evidence [Tr. at 31-32]. But at no point during the adversary proceeding were the admissions themselves actually entered into evidence. Not surprisingly then, CommunityWide did not argue for the preclusive effect of the admissions in front of Judge Dees at the proceeding. As a result, this argument was waived. *In re Lofgren*, 305 B.R. 288, 291 (W.D. Wis. 2003) *aff'd* 85 F. App'x 522 (7th Cir. 2003) (district court cannot consider new evidence on appeal that was never presented to the bankruptcy court); *In re Facility Sys., Inc.*, 101 B.R. 519, 522 (N.D. Ill. 1989)

7

(issues not raised in the bankruptcy court cannot be presented to the district court on appeal.)

This evidentiary oversight also dooms their argument that the court's findings of fact were clearly erroneous. Judge Dees examined the record, heard testimony and found Laughlin's story credible [DE 11-1 at 18]. I must give deference to that determination. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 777 (7th Cir. 2013) (Reviewing courts must be especially deferential toward a lower court's assessment of witness testimony). If CommunityWide had entered Laughlin's admissions into evidence, then Judge Dees may have had a tougher call. The same goes for if CommunityWide had called a witness to contradict Laughlin's testimony. As it was, Judge Dees was faced with essentially unrebutted testimony regarding Laughlin's intent and he choose to believe it. This was not a clear error. *Id.* (Where there are two permissible views of the evidence, a court's choice between them cannot be clearly erroneous).

### C. State Court Judgment

Finally, CommunityWide argues that the state court default judgment against Laughlin for conversion should have precluded Laughlin from arguing he hadn't acted willfully and maliciously. They make this argument two ways: Judge Dees erred by not giving the state court judgment full faith and credit and he erred by not applying the doctrine of collateral estoppel. Neither tack gets CommunityWide around the fatal fact that default judgments like the one entered against Laughlin aren't given preclusive effect under Indiana law.

The preclusive effect of a state court judgment in a subsequent federal lawsuit is determined by the full faith and credit statute, which requires federal courts to refer to the preclusion law of the State in which judgment was rendered. 28 U.S.C. § 1738; *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). So here that means

8

Judge Dees had to look to the preclusion law of Indiana in order to determine the effect of the Indiana judgment. *Marrese*, 470 U.S. at 380; *In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004). Indiana has a two prong test for determining whether collateral estoppel applies: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue; and (2) whether it would otherwise be unfair under the circumstances to permit the use of collateral estoppel. *Tofany v. N.B.S. Imaging Sys. Inc.,* 616 N.E.2d 1034, 1038 (Ind. 1993).

In this case, the first prong of the test effectively ends the inquiry. Indiana courts do not give preclusive effect to default judgments entered against a non-appearing defendant because the defendant has not had a full and fair opportunity to litigate. "Almost all courts hold that where there is a "true default," *i.e.* the debtor made no appearance whatsoever in the prior proceeding, collateral estoppel should not be applied." *In re Massey*, 228 B.R. 686, 690 (Bankr. S.D. Ind. 1998) (applying Indiana law and holding default judgment on conversion claim did not preclude debtor from litigating whether his action was willful)*; Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1175-76 (Ind. Ct. App. 2006) ("Collateral estoppel does not extend to matters that were not expressly adjudicated and can be inferred only by argument"); *Porter's South Shore Cleaners, Inc. v. State*, 512 N.E.2d 895, 898 (Ind. Tax 1987) ("inasmuch as the . . . judgment was obtained by default, the board is not precluded from reasserting the issues . . . " ); *see also Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) (applying Indiana law); *Jones v. Indiana Fin. Co.*, 180 B.R. 531, 533 (S.D. Ind. 1994) (same)*.* The state court judgment against Laughlin was a default judgment that was entered after Laughlin failed to appear. Since Laughlin never appeared to defend himself he did not have a full and fair opportunity to litigate the issues in state court. Therefore, the bankruptcy judge did not err when he refused to give

9

preclusive effect to the default judgment.

## CONCLUSION

Accordingly, the Bankruptcy Court's March 19, 2013 Order is **AFFIRMED**.

**SO ORDERED**.

ENTERED: February 25, 2014          s/ Philip P. Simon
                                                      PHILIP P. SIMON, JUDGE
                                                      UNITED STATES DISTRICT COURT